```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AMY BERTHOLF,                                    :
                                                 :
                Plaintiff,                       :         Civil Action 7:21-cv-01545
                                                 :
        v.                                       :         COMPLAINT
                                                 :
WALLMART, INC.                                   :
                                                 :         JURY TRIAL DEMAND
                Defendant.                       :
                                                 :
-------------------------------------------------------------X
```

## NATURE OF THE ACTION

This is an action under the Americans with Disabilities Act of 1990, as amended, 2008, and the New York Human Rights Law to correct unlawful employment practices in discriminating against and retaliating against a disabled retail worker employed by defendant in 2019. Defendant unlawfully terminated plaintiff Amy Bertholf's employment on the basis of her disability by refusing to grant her a reasonable accommodation of her job duties, when she required a few additional sick days during the 2019 year as an accommodation, but defendant instead adhered rigidly to a definite number of absences and applied a blanket rule excluding her because of her disabilities.

As such, defendant's termination of Bertfholf's employment violated the laws protecting employees from disability discrimination and the prevalent failure in particular to grant even the most modest reasonable accommodations (of several more days off per year) to those individuals who perform near minimum wage work in the United States. Bertholf claims that defendant also violated the New York State Human Rights Law.

## JURY DEMAND

1. Plaintiff Amy Bertholf demands a trial by jury of all issues in this action.

1

**JURISDICTION, PARTIES AND VENUE**

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to the Americans with Disabilities Act of 1990 and its Amendment in 2008 (collectively "the ADAAA").

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of New York.

4. Plaintiff Amy Bertholf ("Bertholf") resides in Livingston Manor, Sullivan County, New York.

5. At all relevant times, defendant Wallmart, Inc. ("Wallmart") has continuously operated as an employer as defined under Title VII and the ADAAA, has continuously had at least 15 employees. It operates Wallmart retail stores throughout the world, and employs approximately a million and a half employees in the United States alone. It operates a store in Monticello, New York, where plaintiff worked in 2019-2020.

6. This Court has jurisdiction over this action pursuant to 42 U.S.C. §12117, 42 U.S.C. §§ 2000e-(5), and 28 U.S.C. §1331, as this case arises under the laws of the United States, in particular the ADAA, 42 U.S.C. §12101 *et. seq*.

7. Venue is appropriate here, because the events about which plaintiff complains occurred where defendant Amerisource regularly conducts its business in Monticello, New York, located in Sullivan County, New York. This is the appropriate federal court location for actions that arise from acts in that Sullivan County location.

8. All administrative prerequisites have been met as plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. She has satisfied the prerequisites under the ADAA and received a Right to Sue Letter from EEOC.

9. More than thirty days prior to the institution of this lawsuit, Bertholf filed charges with the Commission alleging violations of the ADAA by defendant Wallmart. All conditions precedent to the institution of this lawsuit have been fulfilled.

10. In addition, plaintiff brings an additional claim under New York State Executive Law §§296(1)(a) and §297, the Human Rights Law, alleging that defendant Wallmart discriminated under the New York Human Rights Law in the first instance as a court action, and with no required administrative pre-requisites.  Wallmart is a covered employer under the law.

11. As such, plaintiff requests that the Court take supplemental jurisdiction of her claims under the Human Rights Law.  Such substantially overlap with those claims brought here under the ADAA, as to defendant's refusal to grant a reasonable accommodation of plaintiff's job duties.

## FACTS

12. Bertholf began her employment at Wallmart in the Monticello New York store on or about June 14, 2019.  She interviewed for a customer service position with two Wallmart supervisors.  First, she spoke with Stephanie LNU ("Stephanie"), a Human Resources representative who covered the Monticello store.  Next, Bertholf spoke with Erica LNU ("Erica"), a supervisor and department manager for the fresh produce department.

13. Bertholf has a disability as defined under the ADAA in that she has a medical condition of that affects her ability to control her bowel's (irritable bowel syndrome, related to Chron's disease and referred to here as "IBS") and on occasion causes her great pain in her stomach, causing her to double over in pain for a good part of the day.  It prevents her ability to function normally and without pain.  With this condition, Bertholf experiences constant

diarrhea that lasts many hours and is constant, often lasting for most of a day.  When that occurs, Bertholf must always be near the bathroom and toilet.

14. Bertholf also suffers from sarcoidosis, an auto-immune disease that causes her additional pain through the expansion of lymph nodes and inflammatory tissue that can affect one's in her joints, legs, and back, and a shortness of breath affecting her lungs.

15. Bertholf has stayed under the medical treatment of a doctor for approximately five years because of her sarcoidosis.  In approximately 2017, she had her gallbladder removed and her gastroenterologist then discovered that she had developed the IBS, and that that had caused the problem with her gallbladder.  She has a record of these two disabilities.

16. When Bertholf interviewed with Stephanie from Walmart's Human Resources, Stephanie explained the general hours and job responsibilities.  Bertholf told her that the hours were fine, but that once in a while she would likely miss work and need to take a sick day because of her health.  Bertholf explained that she has IBS and that it occasionally flares up at any time and sometimes overnight, so that she simply cannot go out of the house because of her abnormal digestion and pain.

17. At that initial conversation during hire with Human Resources, Bertholf also told Stephanie that she suffers from sarcoidosis, and that occasionally it can be so painful that she is unable to work.

18. Bertholf told Stephanie that she might have to miss a few days of work from this, in total and combined with the IBS. Stephanie had no response except that she told her that she could not deny her the job position because of her health.

19. Immediately after that, Bertholf next interviewed with Erica, the department manager for the produce department, where she would be working in customer service. She also told Erica about the two health conditions that she had disclosed to Stephanie. Bertholf also told her that that the conditions cause her discomfort and pain, and would likely cause her to miss a few days of work.

20. Erica listened to her explain these conditions and never responded or stated that there was any problem in anything Bertholf had told her about sometimes having to take some sick time – nor that it would cause any burden to the store or other employees.

21. Wallmart then hired Bertholf to work in the produce department serving customers, working from 1 p.m. to 10 p.m.

22. Erica stayed as Bertholf's supervisor throughout the summer and fall of 2019. From approximately mid-June to late November 2019, Bertholf had several flare ups of her conditions and called in sick and missed work at different times, adding up to approximately four to five days by late November, because of these intermittent, temporary problems from IBS or pain from the sarcoidosis. That even occurred once when she was at work and had to leave to go home because of the pain and to be near a bathroom

23. On one occasion, after she missed work because of one of her illnesses, Bertholf asked if she could come in to make up her hours. Erica told Bertholf that Wallmart had enough regularly scheduled staff for other days when Bertholf was not scheduled to work.

24. On another occasion, Bertholf tried to give Erica a doctor's note for a different medical condition, and left it on Erica's desk. A few days later, Erica told Bertholf that there's no sense in bringing her a doctor's note, because "we don't accept doctor's notes here."

25. That certainly implied that in the future defendant Wallmart would not and did not engage in the interactive process in attempting to further learn more about Bertholf's conditions and information about her medical condition or engage in an individualized assessment of her condition.

26. During the fall of 2019, Erica spoke to Bertholf (either once or twice) about Walmart's policy limiting customer service workers to five total days of absences during a year of employment. Erica informed Bertholf that she now had too many absences and that she was near the limit or had just arrived there at the five-day limit.

27. Despite being at or near this limit, Erica informed Bertholf that she could excuse her from working only a few more days in the next months. Upon information and belief, Erica determined not to count two to three of Bertholf's absences to date. Erica did warn Bertholf that she had to be careful about passing the limit at all in the next months.

28. Bertholf again told her about her IBS and sarcoidosis and that she could not prevent those absences. Bertholf also told her Erica that she understood there was a rule on absences, but that with IBS and the possible pain from her sarcoidosis, she certainly could not come into work sometimes. Bertholf also explained that she knew that Wallmart had a policy directing employees not to come into work when they were sick. In discussing her illnesses and absences, Bertholf had again requested a reasonable accommodation of the job requirement on absences.

29. Bertholf had approximately three more absences because of the IBS and the sarcoidosis between approximately late November and late January 2020.

30. On approximately January 26, 2020, Bertholf came into work and was unable to clock-in to start work. She was told to go and immediately speak to her boss Erica.

Erica told Bertholf that she had to "let her go." Erica explained that Bertholf had exceeded the number of absences permitted by Wallmart and its policy. Erica informed Bertholf that she had gone over that limit by several sick days in the previous seven plus months.

31. Bertholf reminded Erica that she had missed those extra days because of her illnesses. But Erica told Bertholf that there was nothing she could do and that she would have to let her go.

32. Wallmart knew about Bertholf's disability and she had told Stephanie and Erica that she would likely need to take some few additional days off once in a while. Wallmart may have made an allowance for two or three days when it allowed her to continue to work after November 2019, but still applied a mostly rigid rule about its number of absences. It thus denied her a reasonable accommodation of that strict limit on absences.

33. Clearly, Bertholf's reminding Erica again about her illnesses and the need for some extra days beyond the five-day limit constituted the last in a series of requests for reasonable accommodation of the firm rule limiting an employee to five absences ("the five-day policy". The five-day policy on absences operated as a blanket policy, screening out or disallowing the employment of individuals with a disability who requested an accommodation of the articulated limit.

34. Bertholf missed a total of 8 or 9 days since June 14, 2019 – over a more than seven-month period. Both Stephanie and Erica knew about her two conditions and her need for a reasonable accommodation of the job requirement with the strict limit on the number of absences.

35. In defendant Walmart's application of the five-day policy to Bertholf, defendant effectively also refused to engage in an individualized assessment of Bertholf's health

condition, and her ability to perform the essential functions of the job with a reasonable accommodation.

36. Erica had told Bertholf that "we don't take doctor's notes. Nor did Wallmart ever request or review medical information about Bertholf before terminating her employment.

37. Nor did Wallmart engage in the interactive process in applying its five-day policy when terminating Bertholf's employment.

38. Bertholf's performance in the fresh produce department was always satisfactory. Bertholf worked diligently in the position.

39. Wallmart terminated Bertholf's employment in violation of the ADAA by denying her reasonable accommodation to its strict 5-day policy and in its application of that policy as a blanket rule. A small adjustment of its mostly rigid absences policy as a reasonable accommodation would not have been an undue burden. It failed to engage in an individualized assessment of both her health condition, Walmart's own particular needs or requirement about the five-day policy, and its particular application to this specific employee working in this particular store.

40. As stated, Walmart's work force totals approximately a million and a half employees – the largest employer in the United States. Clearly, given the size of Walmart's operations and status as the largest employer in the United States, it has substantial resources and employees at the ready to fill in or take temporary shifts without any great impact on store operations. There would have been *no undue burden whatsoever* for defendant - given its substantial resources – in granting such an accommodation to Bertholf.

41. Bertholf suffered emotional harm because of Walmart's termination of her employment, and lost backpay amounts from the lost employment and her later employment in a lesser paying position and with lesser hours.

42. In terminating plaintiff's employment, Wallmart acted with malice and disregard for plaintiff's federally protected rights. As such, punitive damages are appropriate under the ADAA.

43. Defendant acted with conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, and punitive damages are appropriate pursuant the New York State Human Rights Law.

## FIRST CAUSE OF ACTION

## ADAA

44. Plaintiff repeats and realleges paragraphs 1 through 44 of this Complaint as if set forth herein.

45. Defendant intentionally violated the ADAA as alleged above, failed to assess or evaluate any potential accommodations to its scheduling, and refused to engage in the interactive process of assessing plaintiff's medical condition using the most current available medical evidence. Defendant instead denied plaintiff's request for a reasonable accommodation of the five-day rule so as to permit a few extra days off when her disabilities necessitated intermittent absences from work. Rather, it summarily fired her and thus violated the ADAAA.

46. Walmart's refusal to grant the request for reasonable accommodation is unlawful because modest modification of the 5-day rule would not have imposed an undue burden on defendant. It imposed a blanket rule rather than review the multiple requests Bertholf had made for a reasonable accommodation.

9

47. As such, defendant's actions harmed Bertholf such that it is liable to her for backpay, lost benefits, front-pay, attorneys' fees, compensatory damages for emotional harm and humiliation, and punitive damages.

48. Defendant is also liable for punitive damages under the ADAAA, because in its refusal to grant a reasonable accommodation its actions were taken with malice and reckless disregard for the law.

## SECOND CAUSE OF ACTION

### Disability under Human Rights Law, Executive Law §296 (1)(a) and §297

49. Plaintiff repeats and realleges paragraphs 1 through 49 of this Complaint as if set forth herein.

50. Defendant intentionally violated the Human Rights Law as alleged above, failed to assess or evaluate any potential accommodations to its five-day rule, and refused to engage in the interactive process of assessing plaintiff's medical condition using the most current available medical evidence. Defendant instead denied plaintiff's request for a reasonable accommodation of the 5-day policy, even though she had only modestly exceeded that limit. Rather, it summarily fired her and thus violated the Human Rights Law.

51. As such, defendant's actions harmed Bertholf such that it is liable to her for backpay, lost benefits, front-pay, compensatory damages for emotional harm and humiliation, and punitive damages.

**WHEREFORE**, Bertholf demands judgment against Defendant as follows:

(a) on the First Cause of Action, an award of statutory damages, including back pay and fringe benefits, compensatory and punitive damages, the exact amount to be proven at trial; including, but not limited to, injunctive relief such as

                    reinstatement to her prior position or front-pay, attorneys' fees, costs and disbursements incurred in connection with this action; and

(b)      on the Second Cause of Action, an award of backpay, compensatory and punitive damages, attorneys' fees, and fringe benefits, including injunctive relief such as reinstatement to her prior position or front-pay, and costs and disbursements incurred in connection with this action.

Dated: Goshen, New York
       February 21, 2021

MICHAEL RANIS, ATTY. AT LAW

By:   *s/Michael Ranis, Esq.*
Michael Ranis, Esq. (MBR #3757)
*Attorneys for Plaintiff*
Co-Lab Goshen
45 St. John St.
Goshen, NY  10924
914-584-6445